IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**THE ERISA INDUSTRY COMMITTEE**,

            Plaintiff,

    v.

**TOBIAS READ**, in his official capacity as
Chair of the Oregon Retirement Savings
Board**,**

            Defendant.

3:17-cv-01605-YY

ORDER DISMISSING WITHOUT
PREJUDICE, INCORPORATING
SETTLEMENT AGREEMENT, AND
RETAINING JURISDICTION

**MOSMAN, J.**,

       Defendant Tobias Read and Plaintiff The ERISA Industry Committee have executed a

settlement agreement ("the Agreement") to discontinue this litigation and, pursuant to Federal

Rule of Civil Procedure 41(a)(2), have filed a joint Motion [29] to enter this order dismissing

without prejudice, incorporating the Agreement, and retaining jurisdiction to enforce this order,

including the Agreement.

       Having reviewed the Motion, the Court finds as follows:

       1.     Plaintiff's Complaint seeks a declaration that the Employee Retirement Income

1 – ORDER OF DISMISSAL

Security Act of 1974, 29 U.S.C. § 1001 et seq. preempts a recently-enacted Oregon law and regulations promulgated thereunder.

2.      Defendant does not agree that the Oregon law is preempted.

3.      Notwithstanding this disagreement, the parties have executed the Agreement with the intention of discontinuing this litigation.

4.      The parties agree that the Agreement fully resolves the dispute at issue in the Litigation and that it disposes of the entirety of this action, except for any action to enforce the Agreement.

5.      The parties therefore jointly request that this Court dismiss the action pursuant to Federal Rule of Civil Procedure 41(a)(2).

6.      Upon dismissal, this Court may properly maintain jurisdiction over the Agreement and over any action brought to enforce it. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).

7.      The Agreement was entered into voluntarily and on the advice of the parties' counsel.

8.      This Court has jurisdiction over this action under 28 U.S.C. § 1331(a).

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b).

Considering the foregoing, it is hereby ORDERED that:

1.      This action is dismissed without prejudice.

2.      Each party shall bear its own costs, attorney's fees, and expenses with respect to this action.

3.      The Agreement, which is attached hereto as Exhibit A, is hereby incorporated by reference and made a part of this order.

2 – ORDER OF DISMISSAL

4.      This Court retains jurisdiction to enforce this order, including the Agreement incorporated herein.

IT IS SO ORDERED.

DATED this __2__ day of ~~March~~ April, 2018.

MICHAEL W. MOSMAN
Chief United States District Judge

# Exhibit A

## SETTLEMENT AGREEMENT

### PREFACE

This Settlement Agreement ("Agreement") is hereby entered into between Tobias Read ("Read"), in his official capacity as Chair of the Oregon Retirement Savings Board ("the ORSB") (Read and the ORSB collectively are "the State"), and The ERISA Industry Committee ("ERIC") on behalf of themselves and their past, present, and future successors-in interest, affiliates (including coordinate governmental agencies and departments), directors, members, officers, agents, representatives, and employees. (The State and ERIC collectively are "the Parties.")

### RECITALS

WHEREAS, the State recently established a retirement program for Oregon workers ("OregonSaves") that requires Oregon employers to register to enroll their employees in OregonSaves absent an available exemption (the "Registration Requirement");

WHEREAS, the State exempted Oregon employers that make available a "Qualified Plan" (defined in Oregon Administration Rule 170-080-0010(2)(u) for some or all of their employees ("Exempt Employers") from the Registration Requirement (the "Exemption"), provided that a certification requirement is met periodically by filing a certificate of exemption (the "Certification Requirement");

WHEREAS, Qualified Plans include employee pension benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA") ("ERISA Plans");

WHEREAS, ERIC (a national trade association that represents the interests of large employers that sponsor employee pension and other benefit plans governed by ERISA) filed a declaratory judgment action against the State in the United States District Court for the District of Oregon ("the Court") challenging the periodic Certification Requirement for Exempt Employers as state-mandated reporting preempted by ERISA ("the Litigation");

WHEREAS, ERIC's complaint in the Litigation did not challenge the Registration Requirement for employers not eligible for the Exemption;

WHEREAS, ERIC confirms on behalf of its membership that all members are eligible for the Exemption because they make available an ERISA Plan to some or all of their employees;

WHEREAS, certain entities in the controlled group of various ERIC members may not make available a Qualified Plan to some or all of their employees and therefore may not be eligible for the Exemption;

WHEREAS, the State denies that ERISA preempts the Certification Requirement for Exempt Employers.

## AGREEMENT

NOW, THEREFORE, in exchange for good and valuable consideration and to mutually settle the Litigation, the Parties agree to the following:

1.      The above Preface and Recitals form a part of this Agreement.

2.      Within five business days of the Parties' execution of this Agreement, the Parties will file the joint motion attached hereto as Exhibit A, which will request entry of the order (the "Order") attached hereto as Exhibit B. The Order dismisses the Litigation without prejudice, provides that each side will bear its own costs and attorney's fees, incorporates this Agreement, and retains jurisdiction to enforce the Order, including this Agreement. The Parties expressly agree that the Court's failure to enter the requested order, material modification of the same, or determination that it lacks jurisdiction to enforce this Agreement (when such determination is final and no longer subject to appeal) shall at either party's election void this Agreement and reopen the Litigation.

3.      ERIC shall not institute, cause to be filed, promote, participate in, or otherwise become involved in any new action against the State reasserting the claims of its complaint in the Litigation, except, however, that the ERIC may reopen the Litigation in the Court for exclusive purpose of enforcing this Agreement.

4.      The State agrees not to seek any penalties or undertake any other enforcement action against ERIC members for failure to comply with the Certification Requirement if, in response to an enforcement action or any other official inquiry or action by the State:

a) The ERIC member notifies the State that it is an ERIC member; and

b) Upon any request for confirmation by the State, ERIC in good faith confirms that the entity is, indeed, an ERIC member. The State expressly agrees that it will limit its confirmation requests under this paragraph (4) to entities that have represented to the State that they are ERIC members.

2

5.      For purposes of the preceding paragraph (4), any entity that is a member of a controlled group (as defined in 26 C.F.R. § 1.1563-1(a)(1)) that includes at least one entity that is an ERIC member ("ERIC Member Controlled Group"), shall be deemed an ERIC member provided that the entity is otherwise eligible for the Exemption because it makes available a Qualified Plan to some or all of its Oregon employees. Entities within an ERIC Member Controlled Group that are ineligible for the Exemption shall not be deemed ERIC members for purposes of the preceding paragraph (4).

6.      Notwithstanding any other provision of this Agreement, the parties mutually reserve their rights regarding the rights and obligations of entities within ERIC Member Controlled Groups that are ineligible for the Exemption and therefore subject to the Registration Requirement.

7.      For purposes of paragraph (4), the State shall address confirmation requests to ERIC in writing by certified U.S. mail or third-party commercial carrier to:

> President and Chief Executive Officer
> The ERISA Industry Committee
> 701 8th Street, N.W.
> Suite 610
> Washington, DC 20001

Upon receipt of a State's confirmation request, ERIC shall within thirty days respond in writing by certified U.S. mail or third-party commercial carrier to:

> Director
> OregonSaves
> 350 Winter Street NE, Suite 100
> Salem, Oregon 97301

ERIC's failure to respond within 30 days of its receipt of a written inquiry under this paragraph (7) shall be deemed as ERIC's denial that the entity in question is an ERIC member.

8.      For purposes of the preceding paragraph (7), the Parties agree to promptly inform each other of any relevant changes in address. Notwithstanding the preceding paragraph (7), the Parties may mutually agree to use another method of communication such as email or telephone. However, should ERIC fail to respond within 30 days to a confirmation request through such other method, its failure shall not be deemed a denial that the entity in question is an ERIC member. Instead, if informal communications under this paragraph (8) fail,

either party can invoke the formal confirmation procedures specified in paragraph (7).

9.     This Agreement shall be a public document and attached to the parties' Order as an exhibit. ERIC may publicly describe the settlement as follows:

> As a result of a settlement with Oregon, ERIC dismissed its lawsuit against the ORSB. Under the terms of the settlement, ERIC members may inform the State, if it asks, that they are ERIC members, and the State will verify their membership with ERIC to confirm their exemption from OregonSaves. In the meantime, ERIC will continue to work with the appropriate federal regulatory agencies to seek changes to existing reporting forms required under ERISA that can provide Oregon and other states the information they desire.

10.     The State agrees to continue to consider in good faith whether current, publicly available data sources may obviate the need for a registration requirement by Exempt Employers. The State welcomes ERIC's assistance in that effort.

11.     If the United States Department of Labor ("DOL") (i) modifies the Form 5500 to require a plan sponsor of an ERISA employee pension benefit plan (each, an "ERISA Plan") to annually list each entity (including each entity's federal employer identification number) within its controlled group with employees covered by an ERISA Plan, and (ii) provides data that is readily accessible in a usable electronic form that allows for a determination as to which Oregon employers offer an ERISA Plan, the ORSB will, within a reasonable time, not to exceed 6 months from the time it is able to access such data, evaluate whether the modified Form 5500 enables it to amend its regulations to rescind the registration requirement for Exempt Employers. The ORSB will communicate changes from the current requirement to affected employers.

12.     ERIC may represent to DOL and others that the State (i) supports modifications to Form 5500 as described in the preceding paragraph (11), and (ii) will consider in good faith using information derived from any modification to Form 5500. The State will reasonably cooperate with information requests from ERIC in connection with ERIC's discussions with federal regulators regarding changes to Form 5500.

13.     This Agreement is limited to the OregonSaves requirement that Exempt Employers register with the State to qualify for the Exemption. The Parties mutually reserve their rights with respect to any other existing or

different or additional regulatory obligation that the State might establish or implement in the future.

14.     This Agreement is being executed solely for the purpose of compromising disputed claims and to avoid the expense and other burdens of litigation. This Agreement shall not be construed as an admission by the State of any of ERIC's allegations or of any liability on the part of the State. The State expressly denies all liability for any encroachment upon ERISA preemption. This Agreement shall not be deemed as any interpretation of ERISA by ERIC or any admission by ERIC concerning ERISA.

15.     This Agreement shall be governed by the laws of Oregon (without reference or regard to that jurisdiction's choice of law or conflict of law provisions).

16.     The Parties agree to submit to the jurisdiction of the Court in the event of any enforcement proceeding.

17.     This Agreement may be executed in counterparts. The Parties shall consider facsimile, scanned, or photocopied signatures valid signatures for purposes of execution of this agreement as of the date of their receipt hereto.

18.     This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and any prior oral or written statements concerning the same are merged herein for all purposes and shall have no independent force and effect.

19.     ERIC and the State represent and warrant that their undersigned representatives are authorized to execute this agreement on their behalf, and hereby acknowledge that each has received the advice of counsel in connection with entering into this Agreement.

The ERISA Industry Committee                Tobias Read, in his official capacity as
                                            Chair of the ORSB, and the ORSB
By:                                         By:

_Annette Garisco Fildes_                    _____
Annette Garisco Fildes                      Tobias Read
President and Chief Executive Officer        Chair

_March 26, 2018_                            _____
Date                                        Date

DM_US 89804586-2.103845.0011

5

## SETTLEMENT AGREEMENT

### PREFACE

This Settlement Agreement ("Agreement") is hereby entered into between Tobias Read ("Read"), in his official capacity as Chair of the Oregon Retirement Savings Board ("the ORSB") (Read and the ORSB collectively are "the State"), and The ERISA Industry Committee ("ERIC") on behalf of themselves and their past, present, and future successors-in interest, affiliates (including coordinate governmental agencies and departments), directors, members, officers, agents, representatives, and employees. (The State and ERIC collectively are "the Parties.")

### RECITALS

WHEREAS, the State recently established a retirement program for Oregon workers ("OregonSaves") that requires Oregon employers to register to enroll their employees in OregonSaves absent an available exemption (the "Registration Requirement");

WHEREAS, the State exempted Oregon employers that make available a "Qualified Plan" (defined in Oregon Administration Rule 170-080-0010(2)(u)) for some or all of their employees ("Exempt Employers") from the Registration Requirement (the "Exemption"), provided that a certification requirement is met periodically by filing a certificate of exemption (the "Certification Requirement");

WHEREAS, Qualified Plans include employee pension benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA") ("ERISA Plans");

WHEREAS, ERIC (a national trade association that represents the interests of large employers that sponsor employee pension and other benefit plans governed by ERISA) filed a declaratory judgment action against the State in the United States District Court for the District of Oregon ("the Court") challenging the periodic Certification Requirement for Exempt Employers as state-mandated reporting preempted by ERISA ("the Litigation");

WHEREAS, ERIC's complaint in the Litigation did not challenge the Registration Requirement for employers not eligible for the Exemption;

WHEREAS, ERIC confirms on behalf of its membership that all members are eligible for the Exemption because they make available an ERISA Plan to some or all of their employees;

WHEREAS, certain entities in the controlled group of various ERIC members may not make available a Qualified Plan to some or all of their employees and therefore may not be eligible for the Exemption;

WHEREAS, the State denies that ERISA preempts the Certification Requirement for Exempt Employers.

## AGREEMENT

NOW, THEREFORE, in exchange for good and valuable consideration and to mutually settle the Litigation, the Parties agree to the following:

1.    The above Preface and Recitals form a part of this Agreement.

2.    Within five business days of the Parties' execution of this Agreement, the Parties will file the joint motion attached hereto as Exhibit A, which will request entry of the order (the "Order") attached hereto as Exhibit B. The Order dismisses the Litigation without prejudice, provides that each side will bear its own costs and attorney's fees, incorporates this Agreement, and retains jurisdiction to enforce the Order, including this Agreement. The Parties expressly agree that the Court's failure to enter the requested order, material modification of the same, or determination that it lacks jurisdiction to enforce this Agreement (when such determination is final and no longer subject to appeal) shall at either party's election void this Agreement and reopen the Litigation.

3.    ERIC shall not institute, cause to be filed, promote, participate in, or otherwise become involved in any new action against the State reasserting the claims of its complaint in the Litigation, except, however, that the ERIC may reopen the Litigation in the Court for exclusive purpose of enforcing this Agreement.

4.    The State agrees not to seek any penalties or undertake any other enforcement action against ERIC members for failure to comply with the Certification Requirement if, in response to an enforcement action or any other official inquiry or action by the State:

a) The ERIC member notifies the State that it is an ERIC member; and

b) Upon any request for confirmation by the State, ERIC in good faith confirms that the entity is, indeed, an ERIC member. The State expressly agrees that it will limit its confirmation requests under this paragraph (4) to entities that have represented to the State that they are ERIC members.

2

5.      For purposes of the preceding paragraph (4), any entity that is a member of a controlled group (as defined in 26 C.F.R. § 1.1563-1(a)(1)) that includes at least one entity that is an ERIC member ("ERIC Member Controlled Group"), shall be deemed an ERIC member provided that the entity is otherwise eligible for the Exemption because it makes available a Qualified Plan to some or all of its Oregon employees. Entities within an ERIC Member Controlled Group that are ineligible for the Exemption shall not be deemed ERIC members for purposes of the preceding paragraph (4).

6.      Notwithstanding any other provision of this Agreement, the parties mutually reserve their rights regarding the rights and obligations of entities within ERIC Member Controlled Groups that are ineligible for the Exemption and therefore subject to the Registration Requirement.

7.      For purposes of paragraph (4), the State shall address confirmation requests to ERIC in writing by certified U.S. mail or third-party commercial carrier to:

> President and Chief Executive Officer
> The ERISA Industry Committee
> 701 8th Street, N.W.
> Suite 610
> Washington, DC 20001

Upon receipt of a State's confirmation request, ERIC shall within thirty days respond in writing by certified U.S. mail or third-party commercial carrier to:

> Director
> OregonSaves
> 350 Winter Street NE, Suite 100
> Salem, Oregon 97301

ERIC's failure to respond within 30 days of its receipt of a written inquiry under this paragraph (7) shall be deemed as ERIC's denial that the entity in question is an ERIC member.

8.      For purposes of the preceding paragraph (7), the Parties agree to promptly inform each other of any relevant changes in address. Notwithstanding the preceding paragraph (7), the Parties may mutually agree to use another method of communication such as email or telephone. However, should ERIC fail to respond within 30 days to a confirmation request through such other method, its failure shall not be deemed a denial that the entity in question is an ERIC member. Instead, if informal communications under this paragraph (8) fail,

3

either party can invoke the formal confirmation procedures specified in paragraph (7).

9.    This Agreement shall be a public document and attached to the parties' Order as an exhibit. ERIC may publicly describe the settlement as follows:

> As a result of a settlement with Oregon, ERIC dismissed its lawsuit against the ORSB. Under the terms of the settlement, ERIC members may inform the State, if it asks, that they are ERIC members, and the State will verify their membership with ERIC to confirm their exemption from OregonSaves. In the meantime, ERIC will continue to work with the appropriate federal regulatory agencies to seek changes to existing reporting forms required under ERISA that can provide Oregon and other states the information they desire.

10.    The State agrees to continue to consider in good faith whether current, publicly available data sources may obviate the need for a registration requirement by Exempt Employers. The State welcomes ERIC's assistance in that effort.

11.    If the United States Department of Labor ("DOL") (i) modifies the Form 5500 to require a plan sponsor of an ERISA employee pension benefit plan (each, an "ERISA Plan") to annually list each entity (including each entity's federal employer identification number) within its controlled group with employees covered by an ERISA Plan, and (ii) provides data that is readily accessible in a usable electronic form that allows for a determination as to which Oregon employers offer an ERISA Plan, the ORSB will, within a reasonable time, not to exceed 6 months from the time it is able to access such data, evaluate whether the modified Form 5500 enables it to amend its regulations to rescind the registration requirement for Exempt Employers. The ORSB will communicate changes from the current requirement to affected employers.

12.    ERIC may represent to DOL and others that the State (i) supports modifications to Form 5500 as described in the preceding paragraph (11), and (ii) will consider in good faith using information derived from any modification to Form 5500. The State will reasonably cooperate with information requests from ERIC in connection with ERIC's discussions with federal regulators regarding changes to Form 5500.

13.    This Agreement is limited to the OregonSaves requirement that Exempt Employers register with the State to qualify for the Exemption. The Parties mutually reserve their rights with respect to any other existing or

different or additional regulatory obligation that the State might establish or implement in the future.

14.    This Agreement is being executed solely for the purpose of compromising disputed claims and to avoid the expense and other burdens of litigation. This Agreement shall not be construed as an admission by the State of any of ERIC's allegations or of any liability on the part of the State. The State expressly denies all liability for any encroachment upon ERISA preemption. This Agreement shall not be deemed as any interpretation of ERISA by ERIC or any admission by ERIC concerning ERISA.

15.    This Agreement shall be governed by the laws of Oregon (without reference or regard to that jurisdiction's choice of law or conflict of law provisions).

16.    The Parties agree to submit to the jurisdiction of the Court in the event of any enforcement proceeding.

17.    This Agreement may be executed in counterparts. The Parties shall consider facsimile, scanned, or photocopied signatures valid signatures for purposes of execution of this agreement as of the date of their receipt hereto.

18.    This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and any prior oral or written statements concerning the same are merged herein for all purposes and shall have no independent force and effect.

19.    ERIC and the State represent and warrant that their undersigned representatives are authorized to execute this agreement on their behalf, and hereby acknowledge that each has received the advice of counsel in connection with entering into this Agreement.

The ERISA Industry Committee

By:

_____
Annette Guarisco Fildes
President and Chief Executive Officer


_____
Date

Tobias Read, in his official capacity as Chair of the ORSB, and the ORSB

By:

_____
Tobias Read
Chair

March 22, 2018
_____
Date

DM_US 89804586-2.103845.0011

5